[Crim. No. 14274. First Dist., Div. Two. Mar. 15, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMY MICHAEL PENA, Defendant and Appellant.

## COUNSEL

David Mundstock, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendant appeals from judgment, after jury trial, of the Contra Costa County Superior Court finding defendant guilty of violation of Penal Code sections 484 and 487, subdivision 1 (grand theft).

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Issue Presented

Does CALJIC No. 14.26 represent an incorrect statement of law?

## Record

Defendant was charged by the District Attorney of Contra Costa County of violation of Penal Code sections 484 and 487, subdivision 1 (grand theft), and alleging one prior felony conviction. The jury found defendant guilty as charged and he admitted the prior conviction. Judgment was entered accordingly and defendant was committed to the California Rehabilitation Center. There is no dispute as to the sufficiency of the evidence. Defendant entered Macy's Department Store at the Concord Sun Valley Mall and stole two men's leather jackets. The prosecution witnesses placed their fair market value at between $125 and $150 each. The defense witness placed the fair market value at $105 each, but testified that her store would sell them at $95 a piece and that some stores in the area would sell them for more than $105 each. The jury found them to be worth at least $100 each.

■ *Does CALJIC No. 14.26 represent an incorrect statement of law?*

The court instructed the jury in accordance with CALJIC Nos. 14.26 and 14.27.[1] CALJIC No. 14.26 is based on Penal Code section 484 which states in pertinent part: "In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, . . ."

Defendant contends that this instruction misstates the law and should not have been utilized as a guideline for any witness or in the jury's determination.

[1]The trial court instructed the jury as follows: "When the value of property alleged to have been taken by theft must be determined, the reasonable and fair market value at the time and in the locality of the theft shall be the test. Fair market value is the highest price, estimated in terms of money, for which the property would have sold in the open market at that time and in that locality, if the owner was desirous of buying but under no urgent necessity of doing so, if the seller had a reasonable time within which to find a purchaser, and if the buyer had knowledge of the character of the property and of the uses to which it might be put. [¶] Any expression of opinion on value that the court has received in evidence may be considered by you in determining value. You are not bound to accept any such opinion as conclusive, but you should give to it the weight to which you shall find it to be entitled. You may disregard any such opinion if you find it to be unreasonable." The foregoing instructions are taken from CALJIC Nos. 14.26 and 14.27, respectively.

The court in examining defendant's witness outside of the jury's presence attempted to determine that the witness be qualified as one familiar with the articles' values in the area, and that the witness have an idea of what the retail prices were in the local area rather than at one particular store. She testified that the value of these jackets was $105 each, but that she would sell them for $95 each. She testified that she determined the fair market value by estimating the highest and the lowest figures.

Defendant by concentrating on the language "the highest price" has misconstrued the instruction. "Highest price" is defined in terms of what the articles would be sold for in the open market if neither buyer nor seller was under any urgent necessity to either buy or sell them. If some stores would underprice the items or would give them away that would not be representative of the fair market value.

CALJIC No. 14.26 does not require that the jury accept whatever value is placed on the article either by its owner or by an expert. It is left to the jury the determination of which valuation, that of the People's expert or that of the defendant's expert, was correct or which expert was credible.

Defendant's claim that *People* v. *Cook* (1965) 233 Cal.App.2d 435 [43 Cal.Rptr. 646] and *People* v. *Tijerina* (1969) 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680], disagree with CALJIC No. 14.26 is not borne out by a reading of those cases. In *Cook* at pages 437 and 438, the court held that the determining factor was the fair market value and not the value of the property to any particular individual that when " 'a thief steals an article from a department store, he steals something having a market value quite different from that which it had in the hands of the wholesaler.' "

In *Tijerina* at page 45, the court held that, "In the absence of proof, however, that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise within the meaning of sections 484 and 487." In the case at bench it appeared that the $95 cost of the jacket in the defense witness' store did not reflect its value in the retail market as defendant's witness testified that the average value of the jackets in the community was $105.

In *People* v. *Simpson* (1938) 26 Cal.App.2d 223, 229 [79 P.2d 119], it is said, "It is not a question of what an owner would have to pay for

reinstalling a magneto; it is the market value thereof which is to be considered by the jury in determining whether the offense is a felony or only a misdemeanor."

Similar instructions have existed for such length of time that it establishes the law. Moreover, logically it is correct. Certainly the fair market value would not be the lowest value that could be put on the article. It is interesting to note that defendant's witness testified that only in her store was $95 the price for which the jackets were sold. She testified that the estimated value in the community between small stores and big stores was $125.

As said in *People* v. *Lizarraga* (1954) 122 Cal.App.2d 436, 438 [264 P.2d 953], " 'The value to be placed upon stolen articles for the purpose of establishing a felony charge is the fair market value of the property and not the value of the property to any particular individual.' "

There is no magic in the term "highest value" in determining "fair market value" of an article. When you have a willing buyer and a willing seller, neither of whom is forced to act, the price they agree upon is the highest price obtainable for the article in the open market. Put another way, "fair market value" means the highest price obtainable in the market place rather than the lowest price or the average price. If one leaves out of the instruction the words "highest price" and gives the rest of the instructions, it still means that the "fair market price" is the highest price obtainable from a willing buyer by a willing seller, neither of whom is forced to act. It is not the highest price in the market but the highest price a willing buyer and a willing seller will arrive at.

Judgment affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied April 14, 1977, and appellant's petition for a hearing by the Supreme Court was denied June 27, 1977. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.